| ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 
 *
 

 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Bonnie B. Humphrey, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public.
 
 In re: Humphrey,
 
 05-0462 (La.3/2/05), 894 So.2d 1128. For the reasons that follow, we now disbar respondent.
 

 FORMAL CHARGES
 
 [1]
 

 Count I
 

 In 2000, respondent represented her sister, Judith Myers, in the domestic relations proceeding captioned
 
 Judith Brown Myers v. William A. Myers, III,
 
 No. 2000-7121 on the docket of the Orleans Civil District Court, Judge Rosemary Ledet presiding. In May 2000, respondent obtained a temporary restraining order on ' behalf of her sister based upon materially false representations regarding the marital domicile of the parties. Specifically, respondent misrepresented that Mr. Myers’ |2office at # 5 Finch Street in New Orleans was the family home of William and Judith Myers, when at the time of the filing, respondent well knew that the family lived in a residence on Dryades Street. As a result of respondent’s false representations, Mr. Myers was evicted from his office and suffered the loss of substantial business property and profits.
 
 [2]
 
 Following a hearing in the matter, at which respondent continued to maintain that # 5 Finch Street was the Myers’ family home, Judge Ledet made a factual finding that “the Finch Street property was not the family residence of the parties when the action was instituted.”
 

 The ODC alleges that respondent’s conduct violates Rules 3.3(a) (a lawyer shall not knowingly make a false statement of fact or law to a tribunal), 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 4.4(a) (in representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person), and 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.
 

 Count III
 

 Respondent represented Barbara Mau-berret-Lavie in child custody litigation
 
 *962
 
 pending in Orleans Civil District Court. Attorneys John Cummings, III and Edith Morris represented the defendant, Michael Lavie. In December 2002, Mr. Cummings filed a complaint against respondent with the ODC, alleging that she engaged in unauthorized and
 
 ex parte
 
 removal of original pleadings from the court record, | ¡¡refused to permit the cross-examination of Ms. Mauberret-Lavie, and cursed opposing counsel and made obscene hand gestures toward counsel.
 

 The ODC alleges that respondent’s conduct violates Rules 3.2 (a lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client), 3.3, and 3.4 of the Rules of Professional Conduct.
 

 Count IV
 

 On August 12, 2002, Ms. Mauberret-Lavie executed an affidavit that was filed into the record of the child custody litigation subject of Count III,
 
 supra.
 
 In the affidavit, sworn to before a notary and two witnesses, Ms. Mauberret-Lavie stated that she “was advised telephonically on or about Tuesday, August 6, 2002 by Bonnie B. Schultz that she was withdrawing as counsel of record. Please be advised that [Darleen] Jacobs is sole counsel of record in this matter.” In October 2002, Ms. Mauberret-Lavie and Mr. Lavie entered into a consent judgment resolving all issues in the case. The consent judgment was signed by Ms. Jacobs as counsel of record for Ms. Mauberret-Lavie, and by attorney Edith Morris as counsel for Mr. Lavie.
 

 Despite the fact that Ms. Mauberret-Lavie was represented by other counsel and that the
 
 Lavie
 
 case had been concluded by consent judgment, respondent continued to file pleadings in the case. On May 5, 2003, respondent filed a motion for appeal of a judgment of the trial court relating to custody of the minor child. Judge Kern Reese dismissed the motion for appeal as moot in light of the consent judgment. Respondent then filed a writ of mandamus in the Fourth Circuit Court of Appeal, alleging that Judge Reese erred in failing to perfect the appeal. On September 4, 2003, the Fourth Circuit ordered Judge Reese to hold an evidentiary hearing to clarify certain issues specified in its order, including “whether Ms. Schultz |4is counsel of record for [Ms. Mauberret-La-vie] to handle any appeal ...” of the custody judgment.
 

 Judge Reese held a hearing on October 2, 2003 pursuant to the Fourth Circuit’s order. Respondent did not appear at the hearing. Ms. MauberreL-Lavie was present at the hearing, along with one of her counsel, Guy D’ Antonio, who unequivocally stated on the record that neither he nor Ms. Mauberret-Lavie had authorized respondent to file the motion for appeal. At the conclusion of the hearing, Judge Reese reported to the court of appeal his finding that respondent was no longer representing Ms. Mauberret-Lavie as of August 9, 2002, and that at no time did Ms. Mauber-ret-Lavie authorize respondent to proceed with an appeal of the custody judgment or to seek a writ of mandamus.
 

 On October 10, 2003, attorneys for Mr. Lavie filed a motion in the Fourth Circuit seeking sanctions against respondent. The court of appeal ordered respondent to respond to the motion within ten days. In turn, respondent filed a motion seeking an extension of time to respond, in which she, among other things, claimed that she was in possession of evidence that Mr. Lavie and his counsel had committed perjury and blackmail; that opposing counsel was complied in child molestation; and that Judge Reese had violated the Code of Judicial Conduct.
 

 The court of appeal found that these allegations in respondent’s motion violated
 
 *963
 
 Rule 2-12.4 of the Uniform Rules of the Courts of Appeal
 
 [3]
 
 and the Louisiana Code of Civil Procedure. The court of appeal struck the inappropriate comments |5from the pleadings, held respondent in contempt of court, and transferred the motion for sanctions to the trial court for a determination of the amount of the sanction to be imposed upon respondent. Following a hearing in May 2004, Judge Reese imposed sanctions against respondent in the amount of $13,171.
 

 The ODC alleges that respondent’s conduct violates Rules 1.2(a) (scope of the representation), 1.3 (failure to act with reasonable diligence and promptness in representing a client), and 1.16 (terminating the representation of a client) of the Rules of Professional Conduct.
 

 Count V
 

 In 2002, New Orleans attorney Kyle Schonekas represented artist George Ro-drigue in a lawsuit captioned
 
 George Ro-drigue v. Jean Bragg Antiques, L.L. C, et al.,
 
 No. 02-15035 on the docket of Orleans Civil District Court. In this suit, Mr. Ro-drigue alleged that certain pieces of artwork he created had been stolen from him by a former employee and then placed on consignment with the defendant art gallery. The defendants, represented by respondent, denied Mr. Rodrigue’s claims and asserted that they were legally in possession of the artwork in question.
 

 At the outset, Mr. Schonekas sought the issuance of a writ of sequestration to secure the artwork in dispute pending the outcome of the litigation. The writ was not issued, but rather, upon agreement of counsel, respondent was designated to hold the artwork in trust until the lawsuit was decided. The trial court’s order, rendered in March 2003, further provided that respondent “does not need to post a bond to secure these art works.” Respondent was ultimately disqualified as counsel for the defendants in July 2003 because she asserted an ownership interest in one of the | lipieces of artwork she held in trust, a work known as the Blue Dog “Cut Out with Neon Light.”
 
 [4]
 

 In August 2004, Mr. Rodrigue settled his dispute with the defendants, who relinquished all claims to the artwork in question. The defendants turned over one of the artworks to Mr. Rodrigue, but respondent still held the Blue Dog and refused to return it, despite repeated demands. In December 2004, the trial court ordered respondent to return the artwork to Mr. Rodrigue, but again she refused to comply. In April 2005, the trial court held respondent in contempt of court for her failure to obey the prior judgment.
 
 [5]
 

 
 *964
 
 In June 2004, Mi*. Schonekas filed a complaint against respondent with the ODC. Mr. Schonekas was prompted to file the complaint upon learning that respondent had filed suit seeking damages against him and Mr. Rodrigue on behalf of her former clients. The lawsuit contains unfounded allegations of professional misconduct against Mr. Schonekas.
 
 [6]
 

 The ODC alleges that respondent’s conduct violates Rule 1.7 (conflict of interest) of the Rules of Professional Conduct.
 

 17Count VII
 

 In 2004, respondent filed a writ application with the Fourth Circuit Court of Appeal in which she sought supervisory review of the sanctions imposed upon her by the trial court in connection with Count IV,
 
 supra.
 
 On January 12, 2005, the court of appeal held respondent in contempt of court for using insulting and discourteous language in a pleading filed with the court, for including irrelevant and inappropriate matter, and for criticizing another person, court, and judge, all in violation of Rule 2-12.4 of the Uniform Rules of the Courts of Appeal and the Louisiana Code of Civil Procedure.
 

 The ODC alleges that respondent’s conduct violates Rule 3.3 of the Rules of Professional Conduct.
 

 DISCIPLINARY PROCEEDINGS
 

 Respondent initially failed to answer the formal charges filed against her. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). Soon thereafter, counsel enrolled on behalf of respondent and filed an answer to the formal charges, generally denying any misconduct and suggesting that substantial mitigating factors are present in this matter. Counsel also requested that the deemed admitted order be recalled, which motion was granted.
 

 In October 2006, the ODC amended Count I of the formal charges, adding new factual allegations and additional alleged rule violations. Respondent, through counsel, answered the amended formal charges and denied any misconduct. The matter then proceeded to a formal hearing on the merits.
 

 18Puring the hearing, respondent stipulated that she violated the Rules of Professional Conduct as charged in Count V, relating to the George Rodrigue matter. Respondent also testified at length in mitigation that the misconduct subject of the formal charges was the result of impaired judgment stemming from personal and emotional difficulties and depression that she suffered during the breakup of her marriage, culminating in a nervous breakdown in 2003 and a suicide attempt in the fall of 2004. Respondent also testified that she was “numbing the pain” with alcohol, cocaine, prescription diet pills, and amphetamines. Respondent testified that she stopped using alcohol and drugs following a psychiatric hospitalization in February 2005 and has been sober since that time. In March 2007, respondent voluntarily signed a five-year recovery agreement with the Lawyers Assistance Program.
 

 Hearing Committee Report
 

 After considering the evidence and testimony presented at the hearing, the hearing committee made the following factual findings:
 

 Count
 
 I — The committee found that respondent knowingly and intentionally misrepresented to Judge Ledet that the Finch Street property was the marital domicile/family home of William and Judith
 
 *965
 
 Myers. The committee based its finding on the testimony of Judge Ledet, who recounted at the hearing that she signed an order on May 8, 2000 allowing Mrs. Myers use of the Finch Street property based on respondent’s representations that this was the family home. It was not until a subsequent hearing on May 26, 2000 that Judge Ledet learned that the Finch Street property was actually Mr. Myers’ office and that the parties resided on Dryades Street. Judge Ledet further testified that given the actual residence of the parties at the time the order was signed, Mrs. Myers was not entitled to occupancy of Finch 1 ¡[Street, and that had she known where the parties were actually living, she would not have granted occupancy of that property to Mrs. Myers. The committee found respondent knew Mrs. Myers was living on Dryades Street at the time she filed the pleading stating that the family home and current mailing address for Mrs. Myers was the Finch Street address. At the time of these incidents, Mr. Myers owned a litigation support business, and respondent contacted his business clients concerning documents that belonged to them which were located at the Finch Street premises. The committee found it particularly troubling that one client, a Houston lawyer, reported he had been contacted by respondent, who requested $500 to let Mr. Myers go into the Finch Street property in order to get photographs and a computer that were needed for the lawyer’s death penalty case.
 

 Based on these findings, the committee determined that respondent’s knowing and intentional misrepresentations to Judge Ledet regarding the marital domicile/ family home of Judith and William Myers caused Mr. Myers to be evicted from his business without cause, deprived Mr. Myers of access to his business records, and damaged his litigation support business. The committee found respondent violated Rules 8.3, 3.4, 4.4, and 8.4(c) of the Rules of Professional Conduct.
 

 Count III
 
 — The committee found the ODC did not prove by clear and convincing evidence that respondent removed pleadings from the court record of the
 
 La vie
 
 matter, as no competent evidence was put forth to show exactly what documents were removed. However, the committee did find that respondent improperly refused to permit cross-examination of her client during a hearing on May 17, 2001 and made obscene comments and gestures to opposing counsel in a hearing on June 5, 2002. In the May 2001 hearing, respondent called her client, Ms. Mauberret-La-vie, to testify and then refused to conclude her direct examination so as to permit opposing counsel an opportunity for cross-examination. The committee 11()rejected respondent’s argument that this was proper trial procedure because she took writs to the Fourth Circuit during the hearing-on the issue of permissible examination of her client. With respect to the June 2002 hearing, the committee found the hearing transcript clearly confirms that respondent used obscenities in the courtroom and was sanctioned $500 for such. The committee noted it was troubled by respondent’s denial of these allegations at the hearing when “the transcript introduced by the ODC confirms that these egregious acts did in fact occur.”
 

 Based on these findings, the committee determined that the ODC did not establish by clear and convincing evidence that respondent removed pleadings from the court record without authority. However, the committee found the ODC did prove by clear and convincing evidence that respondent refused to permit cross-examination of her client and made obscene comments and gestures to opposing counsel. The committee found respondent did not violate Rule 3.2 of the Rules of Profession
 
 *966
 
 al Conduct but did violate Rules 3.3 and 3.4.
 

 Count IV
 
 — The committee found that on August 12, 2002, Ms. Mauberret-Lavie executed an affidavit stating that Darleen Jacobs was sole counsel of record. On October 25, 2002, Ms. Mauberret-Lavie and Mr. Lavie entered into a consent judgment agreeing to joint custody of their child. While respondent claimed that it was not her intention to abandon efforts to appeal issues relating to allegations of molestation of the minor child, the committee was persuaded by the per curiam opinion executed by Judge Reese in August 2003, in which he clearly stated that respondent’s motion for appeal was moot because of the consent judgment and because “Ms. Bonnie Schultz was dismissed as counsel of record in this matter by an Affidavit executed by Plaintiff, Barbara Mauberret-La-vie, on August 12, 2002.” The committee found all the evidence indicated that respondent ceased to be counsel for In Ms. Mauberret-Lavie in August 2002 and that any actions she took thereafter were in violation of Rule 1.16.
 

 Thereafter, the Fourth Circuit Court of Appeal found respondent in contempt based on her request for an extension of time to respond to a motion for sanctions filed by opposing counsel. In her filing, respondent accused her opponent of being complicit in child molestation, perjury, and destruction of evidence. Respondent had in fact made these same charges in a June 2002 hearing in Civil District Court, but she never provided any evidence in support of her allegations.
 

 Based on these findings, the committee determined that respondent continued to file pleadings on behalf
 
 of
 
 Ms. Mauberret-Lavie, namely a writ of mandamus and a motion for appeal, when she no longer represented her, and made unsubstantiated allegations and accused opposing counsel and Mr. Lavie of wrongdoing without sufficient proof or evidence. The committee found respondent violated Rule 1.16 of the Rules of Professional Conduct.
 

 Count
 
 V — Respondent withdrew her denial of the allegations in this count; accordingly, the committee determined that she violated Rule 1.7 of the Rules of Professional Conduct, as charged.
 

 Count VII
 
 — The committee found that in July 2004, respondent filed a writ application with the Fourth Circuit seeking to set aside the imposition of $13,171 in monetary sanctions. In its prior order of September 4, 2003, the Fourth Circuit had suspended execution of a twenty-four hour jail sentence on the condition that respondent pay a $100 fine and refrain from filing any derogatory pleadings in the court of appeal for three years. In her July 2004 writ application, respondent made the same allegations she had made in her 2003 filing with the Fourth Circuit, and as a result, counsel for Mr. Lavie filed a motion to strike and asked the court of appeal to carry out the execution of the previously suspended contempt sentence.
 

 |12On September 7, 2004, the court of appeal issued a “show cause” order to respondent to answer the motion to strike within ten days. Respondent answered by filing a 115-page response which again repeated many of the prior allegations. The court of appeal found respondent in contempt again per an order dated January 12, 2005. The court also made a determination that respondent was disabled from practicing law, and transmitted a copy of its findings to the ODC “for their urgent and immediate action to protect the public until such time as she is no longer disabled from whatever is causing her disability.” Following the court of appeal’s action, respondent was placed on interim suspension effective March 2, 2005.
 

 The committee found the court of appeal’s order speaks for itself and particu
 
 *967
 
 larly noted the grave concern that the court expressed for the public and the legal system as a result of respondent’s disability. The committee found respondent violated Rule 3.8 of the Rules of Professional Conduct.
 

 Considering the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the committee determined that the applicable baseline sanction in this matter is disbarment. The committee found the following aggravating factors apply: a pattern of misconduct and multiple offenses. In mitigation, the committee recognized the following factors: absence of a prior disciplinary record, personal or emotional problems, inexperience in the practice of law, mental disability or chemical dependency, and imposition of other penalties or sanctions.
 

 Under all these circumstances, the committee recommended that respondent be disbarred.
 
 [7]
 
 One member of the committee dissented and would recommend permanent disbarment.
 

 |1sBoth respondent and the ODC objected to the hearing committee’s report. Respondent took issue with nearly all of the factual findings made by the committee and argued that disbarment is too harsh. The ODC argued that the committee erred in considering in mitigation respondent’s history of drug and alcohol abuse as well as the depression she suffered during the breakup of her marriage.
 

 Disciplinary Board Recommendation
 

 After review, the disciplinary board made the following findings:
 

 Count
 
 I — The board deferred to the hearing committee’s determination that Judge Ledet was credible when she testified that respondent had represented to her in an
 
 ex parte
 
 hearing that the Finch Street property was the Myers’ family home, and that she would not have granted use of the property to respondent’s client absent that representation. According to Judge Ledet, during the hearing, respondent never even alerted her to the possibility that another property might be considered to have been the family home. The board rejected respondent’s argument that this testimony by Judge Ledet should be given little weight because the judge admitted she had no specific recollection of reviewing the petition prepared by respondent prior to making her ruling. Judge Ledet clearly recalled how respondent orally represented during the hearing that the Finch Street property was the family home, a fact which later came to be in dispute. Likewise, during the intentional tort suit filed against respondent by Mr. Myers, Judge Ledet testified that she ordered Mr. Myers to be evicted from the Finch Street property in reliance upon respondent’s representations.
 

 Based on these findings, the board determined that respondent violated the Rules of Professional Conduct as follows:
 

 Rule 3.3 requires a lawyer to be candid in the lawyer’s representations to a tribunal. The hearing at issue was an
 
 ex parte
 
 hearing, and Rule 3.3(d) further and 114directly speaks to this situation: “In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.” As respondent’s client was her sister, the board found respondent had every ability to meet her obligation under Rule 3.3(d) to candidly
 
 *968
 
 inform Judge Ledet where the family lived before the divorce petition was filed.
 

 Rule 3.4 requires a lawyer to be candid as a matter of fairness to an opposing party. As noted, respondent made her misrepresentations at an
 
 ex parte
 
 hearing. Given that Mr. Myers was not present at the hearing, the court had to rely exclusively upon the representations made by respondent. When respondent provided incomplete and inaccurate information in an effort to advance her sister’s interests during a contested divorce, she violated the duty of fairness required by Rule 3.4.
 

 Rule 4.4 requires a lawyer to refrain from employing “means that have no substantial purpose other than to embarrass, delay, or burden a third person, ...” Respondent failed to adhere to this standard when she made incomplete and inaccurate representations, which caused Mr. Myers to be evicted from his office and to suffer considerable financial losses.
 

 Rule 8.4(c) requires a lawyer to refrain from conduct involving dishonesty, fraud, deceit, or misrepresentation. Respondent violated this standard when she provided incomplete and inaccurate information to a court.
 

 Count III
 
 — The hearing committee found clear and convincing evidence that respondent improperly refused to allow her client to be subject to cross-examination and made obscene comments and gestures to opposing counsel, but that the ODC did not prove that respondent improperly removed pleadings from a court record. The board agreed with each of these findings. On the cross-examination issue, the board noted that the committee accepted as credible testimony to the effect that respondent 115refused to continue and essentially just walked out of the trial, such that her client was never made available for cross-examination. The record also supports the committee’s finding that respondent was sanctioned for telling her opposing counsel “f* * * you” and that she did not deny using the expletive. Finally, the board noted that nothing in the relevant transcript establishes to a clear and convincing standard that the documents respondent took with her were pleadings that had been clocked in or otherwise filed into the court record.
 

 Based on these findings, the board determined that respondent violated the Rules of Professional Conduct as follows:
 

 Rule 3.2 requires a lawyer to make reasonable efforts to expedite litigation. Respondent acted contrary to this rule by refusing to allow her client to be subject to cross-examination and to continue with the trial as directed by the judge. Respondent also acted contrary to Rule 3.2 when she directed an expletive at opposing counsel, and consumed the court’s time with imposing sanctions for this misconduct.
 

 Rule 4.4 requires a lawyer to refrain from tactics that have no substantial purpose other than to embarrass, delay, or burden others. Respondent acted contrary to this rule by telling her opposing counsel “f* * * you.”
 

 Count IV
 
 — The hearing committee found that the ODC proved by clear and convincing evidence that after Barbara Mauberret-Lavie executed an affidavit stating that respondent no longer represented her in the custody litigation described in Count III, respondent nevertheless continued to file pleadings in the trial court and Fourth Circuit Court of Appeal on behalf of Ms. Mauberret-Lavie. Additionally, the court of appeal held respondent in contempt of court for using “vile, obscene, obnoxious, or offensive” language in her appellate brief, when she made unsubstantiated allegations that her opposing counsel was complicit in child molestation, perjury, and | ^destruction of evidence. The trial court, acting at the Fourth Cir
 
 *969
 
 cuit’s direction, sanctioned respondent $13,171 for her actions.
 

 The board rejected respondent’s argument that Ms. Mauberret-Lavie authorized the appeal to the Fourth Circuit, relying on the affidavit from Ms. Mauberret-Lavie indicating that the attorney-client relationship with respondent had been terminated on August 6, 2002, and that Ms. Mauberret-Lavie was represented by other counsel. The ODC also presented a consent judgment in the litigation, executed on October 25, 2002 by Ms. Mauberret-Lavie, which resolved the issue of child custody. The board deferred to the committee’s determination that this evidence (showing a clear expression of the client’s intent to terminate the representation and then a consent judgment resolving child custody) was more credible than respondent’s testimony.
 

 Based on these findings, the board determined that respondent violated the Rules of Professional Conduct as follows:
 

 Rule 1.2(a) requires that the lawyer respect the client’s ultimate authority to decide the objectives and means of the lawyer’s representation. Respondent disregarded Ms. Mauberret-Lavie’s clear intent that she was no longer represented by respondent, and that the child custody matter had been resolved by Ms. Mau-berret-Lavie’s consent to judgment.
 

 Rule 1.16 requires an attorney to withdraw from representation when the client discharges the lawyer. Ms. Mauberret-Lavie indicated that she no longer employed respondent, yet respondent continued to present a writ application on Ms. Mauberret-Lavie’s behalf.
 

 Rule 4.4 requires a lawyer to refrain from tactics that have no substantial purpose other than to embarrass, delay, or burden others. Respondent acted contrary to this rule by filing pleadings containing the unsubstantiated allegations that her 117opposing counsel was complicit in child molestation, perjury, and destruction of evidence.
 

 Count
 
 V — Respondent does not dispute that she was ordered by a court to hold a piece of artwork in trust during litigation to determine its ownership, but that she failed to release the artwork after the court ordered her to do so. According to the formal charges, the court’s order to release the artwork followed the court’s determination that a conflict of interest barred respondent from continuing the representation, in violation of Rule 1.7. The hearing committee found that respondent committed the misconduct as charged. The board agreed with the committee that respondent engaged in misconduct in this count, but found she violated Rule 1.8(j) of the Rules of Professional Conduct by claiming an ownership interest in the disputed artwork, not the more general conflict of interest rule set forth in Rule 1.7.
 

 Count VII
 
 — This count was initiated by a complaint submitted to the ODC by the Fourth Circuit Court of Appeal. The ODC alleges that respondent was again found in contempt of court by the Fourth Circuit for again filing a pleading with offensive language and unsubstantiated allegations. The hearing committee noted that the pleading at issue was respondent’s writ application, in which she asked the court to set aside the $13,171 in monetary sanctions she was assessed for the unauthorized writ application described in Count IV. Finding that the Fourth Circuit’s opinion “speaks for itself,” the hearing committee concluded that respondent violated Rule 3.3. The board agreed.
 

 The board determined that respondent violated duties owed to her clients, the legal system, and the profession. By its very nature, respondent’s conduct was knowing and intentional. For example, the record reflects that respondent was
 
 *970
 
 twice held in contempt of the Fourth Circuit, and both times for making the same types of insulting and unsupported allegations about opposing counsel and the trial judge. As 118another example of knowing and intentional misconduct, respondent was ordered to return property in which her clients claimed an interest, but she failed to do so.
 

 The injury or potential injury stemming from respondent’s misconduct was serious or potentially serious. For example, respondent refused to return artwork created by the renowned Louisiana artist George Rodrigue, in which her clients claimed an interest. Additionally, when respondent filed an appeal in a child custody matter that her former client did not authorize, the courts and Ms. Mauberret-Lavie’s new counsel had to expend significant time and effort cleaning up the disorder respondent caused. Because respondent’s misconduct is intentional, the board determined that under the AJBA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the applicable baseline sanction in this matter is disbarment.
 

 The board found the following aggravating factors apply: a pattern of misconduct and multiple offenses. In mitigation, the board recognized the following factors: absence of a prior disciplinary record, personal or emotional problems, inexperience in the practice of law, mental disability or chemical dependency,
 
 [8]
 
 and imposition of other penalties or sanctions.
 

 The board concluded that although respondent’s individual acts of misconduct are different, the common thread running through them is the intent behind them. These acts of misconduct were knowingly and intentionally committed. Disbarment is the appropriate baseline sanction for such misconduct, and the board found no reason to deviate from the baseline under the facts of this case. Accordingly, the board recommended that respondent be disbarred.
 

 1 ^Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
 

 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Quaid,
 
 94-1316 (La.11/30/94), 646 So.2d 343;
 
 Louisiana State Bar Ass’n v. Boutall,
 
 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings.
 
 See In re: Caulfield,
 
 96-1401 (La.11/25/96), 683 So.2d 714;
 
 In re: Pardue,
 
 93-2865 (La.3/11/94), 633 So.2d 150.
 

 The factual findings of the hearing committee, as modified by the disciplinary board, are generally supported by the evidence in the voluminous record of this matter. Many of these findings, in particular those made by the committee, rest
 
 *971
 
 upon credibility determinations to which we give great deference.
 
 [9]
 
 However, we do not find clear and convincing evidence that respondent refused to allow her client to be cross-examined by opposing counsel, as charged in Count III. With this one exception, respondent violated the Rules of Professional Conduct as found by the board.
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In considering 12nthat issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 Respondent’s misconduct involves making false representations in a judicial proceeding, attempting to represent a client after being discharged, converting client property, engaging in a conflict of interest, and being held in contempt for filing pleadings containing offensive language and unsubstantiated allegations. The ABA’s
 
 Standards for Imposing Laiv-yer Sanctions
 
 indicate that the baseline sanction for this misconduct is disbarment.
 
 [10]
 

 As aggravating factors, we recognize a pattern of misconduct and multiple offenses. The record supports the following mitigating factors; absence of a prior disciplinary record, personal or emotional problems, mental disability or chemical dependency, and imposition of other penalties or sanctions.
 

 While there are a number of mitigating factors in this case, we do not find that they are sufficient to justify a deviation from the baseline sanction of disbarment. As the board correctly noted, a common thread running through respondent’s misconduct is that it is knowing and intentional. Moreover, respondent has caused significant factual harm. Under these circumstances, we decline to impose a lesser sanction than disbarment.
 

 DECREE
 

 Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Bonnie B. Humphrey, Louisiana Bar Roll number 17125, be and she hereby is disbarred, retroactive to her March 2, 2005 interim suspension. Her name shall be stricken from the roll of attorneys and her license to practice law in the State of Louisiana shall be revoked. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty
 
 *972
 
 days from the date of finality of this court’s judgment until paid.
 

 *
 

 Chief Justice Catherine D. Kimball recused herself after oral argument, and she has not participated in the deliberation of this case. Retired Judge Philip Ciaccio, assigned as Justice
 
 ad hoc,
 
 sitting for Justice Chet D. Traylor, now retired.
 

 [1]
 

 . In the formal charges filed by the ODC in April 2006, respondent was originally charged with a total of seven counts of misconduct. However, during the hearing in this matter, the ODC dismissed Count VI in its entirety. Furthermore, in its report, the disciplinary board recommended that Count II be dismissed for lack of clear and convincing evidence of a violation of the Rules of Professional Conduct. The ODC does not object to the board's finding in this regard. Accordingly, no reference is made in this opinion to either Count II or Count VI.
 

 [2]
 

 . Mr. Myers subsequently sued respondent for damages arising out of this matter. In January 2005, Mr. Myers obtained a $375,000 default judgment against respondent. This judgment was later discharged in respondent's personal bankruptcy.
 

 [3]
 

 . Rule 2-12.4 of the Uniform Rules of the Courts of Appeal provides in pertinent part:
 

 The language used in the brief shall be courteous, free from vile, obscene, obnoxious, or offensive expressions, and free from insulting, abusive, discourteous, or irrelevant matter or criticism of any person, class of persons or association of persons, or any court, or judge or other officer thereof, or of any institution. Any violation of this Rule shall subject the author, or authors, of the brief to punishment for contempt of court, and to having such brief returned.
 

 [4]
 

 . Respondent claimed that the defendants gave her the Blue Dog as her legal fee for representing them in the suit brought by Mr. Rodrigue. The trial court found that the artwork in question was the basis of the dispute between Mr. Rodrigue and the defendants, and that under Rule 1.8(j) of the Rules of Professional Conduct, respondent could not ethically acquire a proprietary interest in the cause of action she was handling for her clients. Accordingly, the trial court ordered that respondent be disqualified as counsel for the defendants based upon her conflict of interest.
 

 [5]
 

 . Mr. Schonekas testified that after expending considerable time, effort and money, he finally recovered the Blue Dog in March 2006 from a convicted drug dealer who contended he had purchased it from respondent for
 
 *964
 
 $3,000. The Blue Dog is alleged to be valued at approximately $50,000.
 

 [6]
 

 . The suit was eventually dismissed on exceptions filed by Mr. Schonekas.
 

 [7]
 

 . The two members of the committee who recommended disbarment felt that the mitigating circumstances were sufficient to warrant allowing respondent the opportunity to apply for readmission. The majority suggested that when respondent applies for readmission, she should be “required to put forth evidence that she has been alcohol and drug-free during the time of her temporary disbarment.”
 

 [8]
 

 . The board rejected the ODC's argument that this factor should not be considered in mitigation at all, reasoning diat there is evidence of a causal link between respondent's depression and drug abuse and the misconduct at issue. Nevertheless, the board noted that not every instance of misconduct was affected by mental disability/chemical dependency issues, as some conduct occurred outside the relevant time frame. Therefore, for the conduct described in Counts I, III, and IV, the board ascribed no mitigation to respondent’s mental disability/chemical dependency evidence.
 

 [9]
 

 . This court generally accepts the credibility evaluations made by those committee members "who were present during respondent's testimony and who act as the eyes and ears of this court.”
 
 In re: Bolton,
 
 02-0257 (La.6/21/02), 820 So.2d 548.
 

 [10]
 

 . See Standards 4.11 ("disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client”); 6.11 ("disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, ...”); 6.21 ("disbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party, or causes serious or potentially serious interference with a legal proceeding”).